UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

PATRICIA MELONEE WISE                                                            PLAINTIFF

V.                                                         CIVIL ACTION NO. 3:11-CV-136-DPJ-ASH

DOUGLAS A. COLLINS, Secretary of the                                          DEFENDANT
United States Department of Veterans
Affairs[1]

ORDER

This Order addresses the second settlement agreement between the parties.  The United States Court of Appeals remanded the case "for an evidentiary hearing to address (1) whether there was a mutual mistake, and, if so, (2) whether that mistake warrants rescission of the agreement."  USCA5 Op. [84] at 14.  Based on the parties' evidence and argument, the Court finds that a mutual mistake voids the disputed settlement agreement.

I.      Background

The procedural history is arduous.  In 2011, Patricia Melonee Wise brought this employment-discrimination action against the Secretary of the Department of Veterans Affairs.  The case quickly settled.  J. [17].  But in 2015, Wise moved [18] to enforce the settlement.  After an evidentiary hearing, the Court ordered mediation, and a settlement conference in January 2016 appeared to resolve the dispute.  It ended with the parties verbally placing a second settlement agreement on the record.  Order [41] (dismissing motion [18]); 2016 Tr. [42] (record of settlement hearing).  The parties never memorialized the terms in writing, but the transcript included these provisions:

- Wise "immediately will apply for federal disability retirement benefits. . . .  If the disability application is granted, the Department of Veterans Affairs will pay [Wise]

---

[1] Secretary Collins as the current Secretary is automatically substituted as a public officer.  Fed. R. Civ. P. 25(d).  The Clerk is directed to amend the docket accordingly.

        $150,000." Jan. 28, 2016 Tr. [42] at 3.

- While the disability-retirement application is pending, Wise "will continue the administrative exhaustion of all of her pending EEO charges." *Id*.

- "If the application for disability is granted, all EEO charges shall be dismissed and [Wise] will provide a general release to the Department of Veterans Affairs except for her pending workers' comp[ensation] claims which are pending through . . . the OWCP," the Department of Labor's Office of Workers' Compensation Programs. *Id*. at 4.

That agreement didn't hold either. Two years later, in 2018, Wise moved [45] to enforce this second settlement, and the Secretary filed a cross-motion [50] asking the Court to enforce that settlement. In general, Wise's disability retirement had been granted, but she refused to retire and instead chose to remain on workers' compensation while claiming that she was still entitled to the $150,000 payment because she applied for disability under the agreement. The Secretary disagreed, saying the $150,000 was contingent on Wise taking disability benefits and retiring. *See* Resp. [51] at 4. The Court denied Wise's motion and granted the cross-motion. Order [61].

Wise then moved for reconsideration [63], arguing for the first time in rebuttal that the Secretary's construction violated 20 C.F.R. § 10.15. Pl.'s Rebuttal [68] at 3. That regulation states: "No employer or other person may require an employee or other claimant to enter into any agreement, either before or after an injury or death, to waive his or her right to claim compensation under the FECA [Federal Employees' Compensation Act]. No waiver of compensation rights shall be valid." Thus, Wise claimed that the government could not force her to waive FECA compensation as the second settlement required. The Court denied the motion for reconsideration [77] concluding that the § 10.15 argument was untimely. Wise appealed.

The Fifth Circuit first found that this Court "did not err in concluding that the settlement agreement does not allow Wise to receive $150,000 because she has not elected disability

retirement." USCA5 Op. [84] at 9. But the circuit concluded that the Court should have considered the delinquent § 10.15 argument. As to that issue, the VA conceded on appeal that under § 10.15 "the court cannot order Wise to immediately retire on disability retirement." *Id.* at 12. But the VA argued "that the parties mistakenly believed that the settlement agreement would require Wise to both retire on OPM disability retirement and dismiss her pending claims against the VA in exchange for the $150,000, which would violate § 10.15 and thus be unenforceable." *Id.* On those arguments, the Fifth Circuit vacated and remanded with instructions for this Court to conduct an evidentiary hearing to find whether the mutual mistake in fact occurred and, if so, whether the second settlement agreement should be rescinded. *Id*. at 14.

Substantial delays followed. Aside from Covid-19, delays resulted from counsel's health, stays due to unrelated claims between the parties, and efforts to settle. It was not until June 11, 2024, that the Court held the evidentiary hearing, which sparked a new round of settlement conversations. While the delay has been significant, the case has not been dormant. Two magistrate judges and the District Court held ten status or settlement conferences with the parties in addition to other communications. But § 10.15 simply makes this dispute exceptionally difficult to settle, so the Court has given the parties every opportunity to explore it. After the final settlement conference failed on September 25, 2024, the Court conducted another in-person status conference on January 24, 2025. Settlement was again considered, but the time has come to answer the questions on remand and see where things go from there.

II.     Standard

As the Fifth Circuit explained, a mutual mistake "is sufficient ground for rescission or cancellation of . . . an agreement." *Wise v. Wilkie*, 955 F.3d 430, 439 (5th Cir. 2020) (quoting *Md. Cas. Co. v. McWilliams*, 175 F.2d 475, 476 (5th Cir. 1949)). "Where a mistake of both

parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party . . . ." Restatement (Second) of Contracts § 152 (1981).[2] The burden is on the party challenging the agreement's validity to show mutual mistake. *Wise*, 955 F.3d at 439 (citing *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 392 (5th Cir. 1984)). The courts do not apply a subjective standard but rather evaluate whether both parties were mistaken "solely by objective circumstances surrounding execution of the contract." 27 *Williston on Contracts* § 70:13 (4th ed.).

III.   Discussion

To recap, the parties have reached two settlement agreements, one in 2011 and another in 2016 after Wise moved to enforce the first settlement. Wise concedes that neither she nor the Secretary was aware of § 10.15 when they reached the second agreement. 2024 Tr. [124] at 28–29. That becomes a material mistake if it affected what the parties agreed to. It's the Secretary's position that both sides believed the agreement required Wise to retire in exchange for a $150,000 payment. Wise denies having agreed to any such thing, but the Court finds her assertion inconsistent with what the parties stated at the 2016 settlement hearing and what they did shortly after the hearing.

At that 2016 hearing, Wise's counsel stated on the record that she would "apply for federal retirement disability benefits" and "[i]f the disability application is granted," then the Secretary would pay her $150,000. 2016 Tr. [42] at 3. She would also release all claims against the Secretary "except for her pending workers' comp claims." *Id.* at 4. When her counsel sought

---

[2] The Restatement makes an exception for when the party adversely affected must bear the risk of the mistake, but the parties haven't suggested that exception applies here.

4

to "clarify" that her workers-compensation claims included "lost pay," the Secretary objected: "We can't agree to her being paid for lost pay when we're paying her for lost pay." *Id*. at 5–6.

The parties then agreed that she would confine her workers-compensation claims to medical expenses, *id*. at 6, and Wise confirmed on the record her understanding of the terms of the settlement, "[j]ust as long as I can continue the medical from workman's comp," *id*. at 7.

Correspondence shortly after the 2016 hearing also confirms the parties' beliefs about their agreement. On January 29, 2016, Wise's counsel wrote to the Secretary's counsel that he was submitting to the Court an order dismissing Wise's motion to enforce the (first) settlement agreement. Jan. 29, 2016 Ltr. [119] at 1. The letter stated the dismissal was "subject to the Motion's being called up if [Wise] does not receive federal disability benefits." *Id*. The Court cannot understand this letter as meaning anything other than Wise's settlement included her obtaining disability benefits.

And that had to mean retirement benefits, not FECA benefits, because Wise testified she didn't even learn she "could receive workers' comp payments monthly in place of [her] salary" until May 2016, months *after* the second agreement. 2024 Tr. [124] at 42. Wise also testified that the FECA salary-replacement benefits are "substantially more" than her disability retirement benefits would have been. *Id*. at 49. In fact, counsel for the Secretary showed that Wise's FECA benefit pays $7,780 every four weeks, while after age 62 (which she reached in 2017) her disability payments would be around $1,490.36 a month. *Id*. at 53. Thus, there was an incentive not to retire after discovering these potential benefits.

Having weighed Wise's testimony, the Court finds that both parties agreed in 2016 that Wise would go on disability retirement in exchange for $150,000. As the Court stated at the 2024 hearing, "the parties agreed she was going to take disability retirement, and in exchange,

5

she would get $150,000, and then she didn't do it." 2024 Tr. [124] at 33. *See also* USCA5 Op. [84] at 11 (finding that "the most forthright interpretation of the parties' agreement regarding Wise's ability to pursue workers' compensation is that those medical benefits would be available until she was granted disability retirement benefits, at which point she would retire and collect the $150,000").

Significantly, neither side knew in 2016 that § 10.15 rendered that agreement unenforceable. This misunderstanding therefore had an obvious "material effect on the agreed exchange of performances." Restatement (Second) of Contracts § 152 (1981). Rescission is warranted.

So, what happens now? The rescinded 2016 settlement agreement resolved a dispute over the 2011 settlement agreement. Now that the 2016 agreement has been rescinded, that seemingly means the motion to enforce the 2011 agreement should be revived. But the dispute back then was whether the VA breached provisions of the 2011 agreement requiring Wise's continued employment at the VA. Both sides now agree Wise can no longer perform those duties. So, is the employment provision of that agreement simply moot while the rest of the 2011 agreement remains in effect? And what becomes of Wise's continued "employment" under which she is drawing FECA benefits despite being potentially unable to return to the VA? As discussed with the parties at the January 25, 2025 status conference, the Court directs the parties to brief these questions and any other matters relevant to a final resolution of this long-pending matter.

IV.    Conclusion

The Court has considered all arguments and evidence presented. Any not specifically addressed above would not change the outcome. The Court finds that the parties entered into the

2016 settlement agreement under a mutual mistake about whether it was legally enforceable; the 2016 agreement is therefore void.

The Court orders the parties to submit simultaneous briefs, not to exceed 15 pages each, on the remaining issues in the case. These briefs are due 14 days from the date of this Order, and the parties may each file one response to the other's brief within 28 days from the date of this Order, not to exceed 10 pages each.

**SO ORDERED AND ADJUDGED** this the 27th day of February, 2025.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE